Slip Op. 08-61

UNITED STATES COURT OF INTERNATIONAL TRADE

_____
                                 :
WUHAN BEE HEALTHY CO., LTD.       :
and PRESSTEK INC.,                :
                                 :
            Plaintiffs,           :
                                 :
        v.                        :  Before: Richard K. Eaton, Judge
                                 :
UNITED STATES,                    :  Court No. 05-00438
                                 :
            Defendant,            :
                                 :
        and                       :
                                 :
THE AMERICAN HONEY                :
PRODUCERS ASSOCIATION             :
and THE SIOUX HONEY               :
ASSOCIATION,                      :
                                 :
            Def.-Ints.            :
_____:


                            OPINION

[United States Department of Commerce's final remand results
sustained.]

                                     Dated:  May 29, 2008

*Kalik Lewin* (*Martin J. Lewin* and *Brenna Steinert Lenchak*), for
plaintiffs.

*Gregory A. Katsas*, Acting Assistant Attorney General; *Jeanne E.
Davidson*, Director, Commercial Litigation Branch, Civil
Division, United States Department of Justice (*Jane C. Dempsey*), for
defendant.

*Kelley Drye Collier Shannon* (*Michael J. Coursey* and *R. Alan
Luberda*), for defendant-intervenors.


        Eaton, Judge:  In *Wuhan Bee Healthy Co. v. United States*, 31

CIT __, Slip Op. 07-113 (July 20, 2007) (not reported in the

Federal Supplement) ("*Wuhan*"), this court sustained, in part, and remanded, in part, the final results of the United States Department of Commerce's ("Commerce" or the "Department") second administrative review of the antidumping duty order on imports of honey from the People's Republic of China ("PRC") made between December 1, 2002 and November 30, 2003. *See* Honey from the PRC, 70 Fed. Reg. 38,873 (Dep't of Commerce July 6, 2005) (final results) and the accompanying Issues and Decision Memorandum (June 27, 2005), Pub. Doc. 341 ("Issues & Dec. Mem.") (collectively, "Final Results").

Commerce has now issued remand results pursuant to the court's order. *See* Final Results of Determination Pursuant to Court Remand, *Wuhan Bee Healthy Co., Ltd. and Presstek Inc. v. United States,* Court No. 05-00438, Slip Op. 07-113 (July 20, 2007), (Oct. 16, 2007) Pub. Doc. 3378 ("Remand Results").

In turn, the court has reviewed the Remand Results and the filings in support thereof. *See* Def.-Ints.' Comments on Remand Results; Def.'s Reply to Comments. It is worth noting at the outset that, although they have been afforded two opportunities to comment on the Remand Results, plaintiffs have declined to do so. Jurisdiction is had pursuant to 28 U.S.C. § 1581(c) (2000) and 19 U.S.C. § 1516a(a)(2)(B)(iii) (2000). For the reasons discussed below, the court sustains Commerce's remand results.

STANDARD OF REVIEW

When reviewing a final antidumping determination from Commerce, the court "shall hold unlawful any determination, finding, or conclusion found . . . to be unsupported by substantial evidence on the record, or otherwise not in accordance with law. . . ."  19 U.S.C. § 1516a(b)(1)(B)(i).

DISCUSSION

I.   Wage Rate Calculation

The cost of labor (or wage rate) is a factor of production used to construct normal value.  As this Court has observed, "Commerce treats the wage rate differently from all other factors of production[.] [F]or [the cost of] labor, Commerce employs regression-based wage rates reflective of the observed relationship between wages and national income in market economy countries."  *Wuhan*, 31 CIT at __, Slip Op. 07-113 at 34 (citing *Dorbest Ltd. v. United States*, 30 CIT __, __, 462 F. Supp. 2d 1262, 1291 (2006)).  In *Wuhan*, plaintiffs challenged as unsupported by substantial evidence Commerce's determination with respect to the wage rate calculation.  Plaintiffs have not challenged the wage rate methodology itself.  After its review, the court directed Commerce, on remand, to explain its decisions, (1) to include data from high-wage countries in its non-market economy ("NME") wage rate calculation, and (2) to exclude from

that calculation data from twenty-two low-wage countries placed on the record by plaintiffs. *Wuhan*, 31 CIT at __, Slip Op. 07-113 at 40. In addition, Commerce asked for a voluntary remand. Thus, the court also instructed Commerce to recalculate the PRC wage rate using the data set out in its remand request. *Id.* at __, Slip Op. 07-113 at 41.[1]

In its Remand Results, Commerce expanded the "basket of countries" used in the determination of NME wage rates to include "all countries for which data are available" and which "meet the Department's suitability requirements." Remand Results at 5. The suitability requirements include "the availability and contemporaneity of the data, and earnings data [that] cover both men and women and all reporting industries in the country." *Id*. Thus, Commerce has added new data from both low-wage and high-wage countries. This broader data set, according to Commerce, "better ensures accuracy and fairness" for purposes of calculating the regression. *Id*.

For Commerce, the expansion of the data set, when combined with an explanation of why such expansion was useful, is sufficient to address the court's concerns about the use of data from high-wage countries. The Department states that

---

[1] Commerce sought a voluntary remand "with respect to the calculation of the wage rate because it mistakenly relied upon income data from two different years (*i.e.*, 2001 and 2002) in its calculation of the surrogate wage rate." Remand Results at 24 (quotation omitted).

"restricting the basket of countries to include only countries that are economically comparable to each NME is not feasible and would undermine the consistency and predictability of the Department's regression analysis."  Remand Results at 16.  A basket of "economically comparable" countries could be extremely small, and a regression based on an extremely small basket of countries "would be highly dependent on each and every data point."  *Id*.

> Relative basket size would not be such a critical factor if there were a perfect correlation between GNI [Gross National Income ("GNI")] and wage rates.  If this were the case, a precise regression line could be derived from suitable data from only two countries.  However, as the Department has noted repeatedly, while there is a strong world-wide relationship between wage rates and GNI, there is nevertheless variability in the data.  For example, in the data relied upon for the Department's revised 2004 calculation for purposes of this remand, observed wage rates did not increase in lockstep with increases in GNI in the five countries with GNI less than [] $1000. . . .

Remand Results at 17.  Therefore, according to Commerce, using a larger basket of countries, including high-wage countries, "minimizes the effects of any single data point, and thereby, better captures the global relationship between wage rates and GNI."  Remand Results at 17.

As to plaintiffs' proposed addition of twenty-two low-wage countries, Commerce evaluated the data from each of those

countries against its new selection criteria, i.e., its
suitability requirements, and determined that twenty-one
countries should remain excluded from its analysis. *Id*. at 6.
Specifically, Commerce found that fourteen countries[2] lacked
contemporaneous data for either 2001 or 2002. *Id*. at 7, 7 n. 4.
Commerce excluded five countries[3] because no earnings data were
available for them. *Id.* at 7. Two countries[4] were excluded
because no exchange rates were available in the International
Monetary Fund's ("IMF") International Financial Statistics.[5] *Id*.
at 8. Commerce excluded Zimbabwe because it lacked GNI data for
2002, the base year.[6] *Id*. at 9.

Finally, pursuant to the voluntary remand, Commerce
recalculated the NME wage rates using the most current data
available, from December 2004, and corrected its erroneous

---

[2] Algeria, Bangladesh, Belgium, Bolivia, Gambia, Greece, Kenya, Kuwait, the Philippines, Portugal, Rwanda, Saudi Arabia, Swaziland, and Venezuela.

[3] Cambodia, Indonesia, the Netherlands, Thailand, and Peru.

[4] Serbia and Montenegro.

[5] Although plaintiffs introduced exchange rate data from The World Fact Book, the Department found it inappropriate to deviate from its standard practice of relying on IMF data and "cherry-pick" data from alternative sources. *See* Remand Results at 8.

[6] "The 'Base Year' is the year upon which the regression data are based and is two years prior to the year in which the Department conducts its regression analysis." Remand Results at 6.

calculation of the PRC wage rate based on the non-current GNI and wage rate data for the market economies from 2001. *Id*. at 28-29. The recalculated PRC wage rate, using the revised data set, reduced the rate from $0.93 per hour to $0.77 per hour. *See* Remand Results at 29.

The court finds that Commerce has provided a reasonable explanation for its Remand Results and supported those results with substantial evidence. First, Commerce's explanation that data from high-wage countries was necessary, because the imperfect correlation between wage rates and GNI was rendered more accurate by the inclusion of more data, appears reasonable. Thus, Commerce's explanation of its expansion of the data set used to determine NME rate is consistent with the court's remand instruction to explain its decision to include data from high-wage countries in its wage rate calculation. Remand Results at 17. Including data from high-wage countries is reasonable if the results more accurately reflect the relationship between wage rates and GNI under Commerce's regression methodology. Commerce has represented that the inclusion of high-wage countries does provide greater accuracy and no party has disputed this representation.

Second, Commerce did a thorough analysis of the data from the twenty-two countries plaintiffs hoped to add to those used in the regression analysis. Commerce has thus given an adequate

explanation for including or excluding each country's data.  As a result, Commerce has complied with the court's remand instruction to explain why it excluded twenty-one of the twenty-two countries' data from its calculation.

Finally, with respect to its request for voluntary remand, Commerce recalculated the wage rate using the correct, most current, wage rate data.  "As long as the agency's methodology and procedures are reasonable means of effectuating the statutory purpose, and there is substantial evidence in the record supporting the agency's conclusions, the court will not impose its own views as to the sufficiency of the agency's investigation or question the agency's methodology." *Shieldalloy Metallurgical Corp. v. United States*, 20 CIT 1362, 1368, 947 F. Supp. 525, 532 (1996) (quotations and citations omitted).  Commerce's explanation reveals its data selection on remand to be reasonable and that it has supported its findings with substantial evidence. *See United Steel, Paper and Forestry, Rubber, Manufac., Energy, Allied Industr. and Service Workers Int'l Union v. United States Sec'y of Labor*, 32 CIT __, __, Slip Op. 08-45, at 7 (April 30, 2008) ("A fundamental requirement of administrative law is that an agency set forth its reasons for decision.") (quotation and citation omitted).  Thus, Commerce's results regarding its wage rate calculation are sustained.

II.  Antidumping Duty Assessment

The court in *Wuhan* also directed Commerce to provide plaintiffs "the opportunity to submit further comments on whether Commerce should calculate assessment and cash deposit rates on an *ad valorem* basis or a per kilogram basis" and allow plaintiffs to "place evidence on the record, should it find it necessary to do so, specifically with respect to how an *ad valorem* methodology furthers, or does not further, the collection of total duties owed."  *Wuhan*, 31 CIT at __, Slip Op. 07-113 at 55-56.  The court further instructed Commerce to "fully explain its decision [on remand] to use a per kilogram or *ad valorem* methodology by reference to evidence placed on the record."  *Id*. at _, Slip Op. 07-113 at 56.

Pursuant to the court's remand instruction, Commerce opened the administrative record and sought comments on whether the Department's change in methodology to a per kilogram basis ensured the proper collection of total duties due.  Remand Results at 18.  The Department provided the parties ten days to submit comments.  *Id.*  Defendant-intervenors timely submitted comments, however, plaintiffs neither submitted any comments nor requested an extension to the ten-day period.  *Id*. at 19.

Commerce on remand determined that "it continues to be appropriate to assess antidumping duties on a per-kilogram basis in this case" because "the use of a per-kilogram assessment rate

is in accordance with the Department's regulations and past practice, and [is] based on the evidence on the record." Remand Results at 21. Commerce "normally [ ] calculates the assessment rate by dividing the dumping margin . . . by the entered value of [the] merchandise for normal customs duty purposes" and applies this *ad valorem* rate to the entered value of the merchandise to calculate total antidumping duties due. *Id.* at 20, 22. In this case, however, Commerce found that plaintiffs were reporting an entered value of $1.05 - $1.50 per kilogram, an amount that was approximately half of the U.S. sales price at $2.20 - $2.30 per kilogram. *Id*. at 23. According to Commerce, such discrepancy translated into a potential for under-collecting duties by more than 50 percent because the *ad valorem* dumping margin percentage would be applied to the lower entered value. *Id.* at 23. Because it believed that the *ad valorem* method would allow plaintiffs to avoid the total duties due, Commerce concluded that "the application of the revised [per-kilogram] methodology will result in the more accurate collection of duties in this case." *Id*. at 23.

The court finds that Commerce has complied with the court's instructions regarding the antidumping duty assessment methodology. Commerce provided a ten-day comment period to all parties and addressed the court's concern that plaintiffs were prejudiced by the inadequate time to fully review and comment on

the Department's duty assessment methodology change.  Commerce

also provided a reasonable explanation for its decision on remand

to maintain the per-kilogram rate.

With respect to the rate itself, although Commerce normally

calculates assessment rates on an *ad valorem* basis, it has

discretion to revise the assessment methodology and adopt a

reasonable method for ensuring an accurate collection of total

duties due.  *See Koyo Seiko Co. v. United States,* 258 F.3d 1340,

1346 (Fed. Cir. 2001) quoting *Torrington Co. v. United States*, 44

F.3d 1572, 1578 (Fed. Cir. 1995) ("[T]he antidumping statute . .

. 'merely requires that . . . the difference between foreign

market value and United States price serves as the basis for the

assessment rate.'").

Because Commerce's method of determining the antidumping

duty assessment and cash deposit rates is reasonable and follows

the court's remand instructions, Commerce's remand results on

this issue are sustained.

III.  Plaintiffs' Failure To Raise Objections To Remand Results

Commerce revised its Final Results pursuant to the court's

order in *Wuhan* and released its draft Remand Results to

interested parties for comment on September 7, 2007.  Remand

Results at 2.  Defendant-intervenors submitted comments in

support of the Department's draft Remand Results, stating that

the Department explained in detail why its methodology was "both lawful and rational." Remand Results at 2. Plaintiffs provided no comments. Remand Results at 2. Upon the release of Commerce's final Remand Results, plaintiffs failed again to provide any comments. Under such circumstances, Commerce "may well be entitled to assume that the silent party has decided, on reflection, that it concurs in the agency's [remand results]," and the court will uphold the parties' concurrence. *Al Tech Specialty Steel Corp. v. United States,* 29 CIT __, __, 366 F. Supp. 2d 1236, 1245 (2005).

### CONCLUSION

For the reasons stated, Commerce's Remand Results are sustained. Judgment shall be entered accordingly.

                                    /s/ Richard K. Eaton
                                    Richard K. Eaton

Dated:    May 29, 2008
          New York, New York